1   John R. Clemency (Bar No. 009646)
    Lindsi M. Weber (Bar No. 025820)
2   **GALLAGHER & KENNEDY, P.A.**
    2575 East Camelback Road
3   Phoenix, Arizona 85016-9225
    Telephone:    (602) 530-8000
4   Facsimile:    (602) 530-8500
    Email:        john.clemency@gknet.com
5                 lindsi.weber@gknet.com
    *Attorneys for Debtors*
6
7                 **IN THE UNITED STATES BANKRUPTCY COURT**

8                     **FOR THE DISTRICT OF ARIZONA**

9   In re:                              Chapter 11 Proceedings

10  DUNLAP OIL COMPANY, INC.,           Case No. 4:12-bk-23252-BMW

11
    QUAIL HOLLOW INN, LLC,              Case No. 4:12-bk-23256-BMW
12
13               Debtors.               (Jointly Administered)

14   Filing applies to:

15   DUNLAP OIL COMPANY, INC.        ☐

16   QUAIL HOLLOW INN, LLC           ☐

17   BOTH                            ☒

18

19
            **SECOND AMENDED JOINT PLAN OF REORGANIZATION**
20
                    **DATED DECEMBER 27, 2013**
21

22

23

24

25

26

# <u>TABLE OF CONTENTS</u>

ARTICLE I INTRODUCTION ...................................................................................1

ARTICLE II DEFINITIONS ....................................................................................1

2.1.  Administrative Expense Claim...............................................................1
2.2.  Allowed .................................................................................................1
2.3.  Allowed Administrative Expense Claim.................................................2
2.4.  Allowed Secured Tax Claim...................................................................2
2.5.  Allowed Unsecured Claim......................................................................2
2.6.  Assets.....................................................................................................2
2.7.  Ballot .....................................................................................................2
2.8.  Bankruptcy Code ...................................................................................2
2.9.  Bankruptcy Court ..................................................................................2
2.10. Bankruptcy Rules ..................................................................................2
2.11. Bar Date ................................................................................................2
2.12. Business Day .........................................................................................3
2.13. Cash .......................................................................................................3
2.14. Cash New Value Contribution...............................................................3
2.15. Case .......................................................................................................3
2.16. CCB........................................................................................................3
2.17. CCB Collateral.......................................................................................3
2.18. Claim......................................................................................................3
2.19. Claimant.................................................................................................3
2.20. Class.......................................................................................................3
2.21. Confirmation..........................................................................................3
2.22. Confirmation Date .................................................................................3
2.23. Confirmation Hearing............................................................................3
2.24. Confirmation Order ...............................................................................4
2.25. Contested ...............................................................................................4
2.26. Cox.........................................................................................................4
2.27. Cox Collateral........................................................................................4
2.28. Creditor..................................................................................................4
2.29. Debt........................................................................................................4
2.30. Debtor ....................................................................................................4
2.31. Deficiency Claim ...................................................................................4
2.32. Disallowed Claim ..................................................................................4
2.33. Disclosure Statement .............................................................................4
2.34. Disputed Claim ......................................................................................4
2.35. DOC........................................................................................................4
2.36. Effective Date ........................................................................................5
2.37. Estate .....................................................................................................5
2.38. Executory Contract ................................................................................5
2.39. Final Order .............................................................................................5

2.40. General Unsecured Claim ................................................................5
2.41. Impaired ........................................................................................5
2.42. Jackson ..........................................................................................5
2.43. Jackson Supply Agreement ............................................................5
2.44. Lien ...............................................................................................5
2.45. Net Proceeds .................................................................................5
2.46. New Value Contribution ................................................................5
2.47. Petition Date .................................................................................6
2.48. Pineda ...........................................................................................6
2.49. Pineda Collateral ..........................................................................6
2.50. Plan ...............................................................................................6
2.51. Prime Rate .....................................................................................6
2.52. Priority Tax Claim .........................................................................6
2.53. Proceedings ...................................................................................6
2.54. Professional Persons .....................................................................6
2.55. Professional Fee Claim ..................................................................6
2.56. Pro Rata ........................................................................................6
2.57. QHI. ..............................................................................................7
2.58. Real Property New Value Contribution. .......................................7
2.59. Reorganized Debtor ......................................................................7
2.60. Returned Properties ......................................................................7
2.61. Secured Claim ...............................................................................7
2.62. Sold Assets ....................................................................................7
2.63. Stipulated CCB Values ..................................................................7
2.64. Stipulated Pineda Values ...............................................................7
2.65. Unsecured Claim ...........................................................................8
2.66. Unsecured Distribution Amount ....................................................8
2.67. Interpretation, Rules of Construction, and Other Terms. ...............8
ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .............................9
3.1.  General Classification Provisions ...................................................9
3.2.  Classification of Claims and Interests ............................................9
ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMANTS IMPAIRED
OR UNIMPAIRED UNDER THE PLAN ..............................................................10
4.1.  Unimpaired Classes of Claims and Interests. ...............................10
4.2.  Impaired Classes of Claims and Interests. ....................................10
ARTICLE V PROVISIONS FOR TREATMENT OF .............................................11
UNCLASSIFIED CLAIMS UNDER THE PLAN ..................................................11
5.1.  Administrative Claims ..................................................................11
5.2.  Administrative Claims Bar Date ...................................................11
5.3.  Priority Tax Claims ......................................................................11
ARTICLE VI PROVISIONS FOR TREATMENT OF CLAIMS NOT
IMPAIRED UNDER THE PLAN .........................................................................12
6.1.  Class 4 (Equity Security Interests in DOC) .................................12
6.2.  Class 5 (Membership Interests in QHI) ........................................12

iii

ARTICLE VII PROVISIONS FOR TREATMENT OF CLAIMS IMPAIRED UNDER THE PLAN .......................................................................................13

    7.1.  Class 1 (Secured Tax Claims) ...........................................................13

    7.2.  Class 2 (Secured Claims)...................................................................16

    7.3.  Class 3 (Unsecured Claims) ..............................................................20

ARTICLE VIII MEANS OF EFFECTUATING THE PLAN.........................................21

    8.1.  Conditions Precedent to Occurrence of Effective Date.....................21

    8.2.  Implementation. ................................................................................21

    8.3.  Future Management of Debtor ...........................................................22

ARTICLE IX RESOLUTION OF CLAIMS, DEMANDS, AND CAUSES OF ACTION .....................................................................................................23

    9.1.  Preservation of Debtors' Claims, Demands, and Causes of Action .................23

    9.2.  Procedure for Determination of Claims. ...........................................23

ARTICLE X EXECUTORY CONTRACTS ...............................................................23

    10.1.Assignment, Assumption or Rejection of Executory Contracts.......................23

    10.2.Rejection of Executory Contracts.....................................................24

    10.3.Assumption of Other Executory Contracts........................................24

    10.4.Rejection Claims Bar Date................................................................24

ARTICLE XI MODIFICATION OF THE PLAN .......................................................24

    11.1.Modification of the Plan ...................................................................24

ARTICLE XII RETENTION OF JURISDICTION......................................................25

    12.1.In General .........................................................................................25

    12.2.Plan Disputes and Enforcement........................................................25

    12.3.Further Orders...................................................................................25

    12.4.Governmental Units or Regulatory Agencies....................................25

    12.5.Final Decree......................................................................................25

    12.6.Appeals .............................................................................................25

    12.7.Executory Contracts .........................................................................26

    12.8.Fees of the Chapter 11 Professionals.................................................26

    12.9.Other Claims.....................................................................................26

ARTICLE XIII GENERAL PROVISIONS .................................................................26

    13.1.Extension of Payment Dates .............................................................26

    13.2.Notices ..............................................................................................26

    13.3.Closing of the Case...........................................................................26

    13.4.General Injunction ............................................................................26

    13.5.Interest ..............................................................................................27

    13.6.Additional Assurances......................................................................27

    13.7.Confirmation by Non-Acceptance Method .......................................27

    13.8.Vesting..............................................................................................27

    13.9.Successors and Assigns ....................................................................27

    13.10. Withdrawal of Plan .......................................................................27

    13.11. Severability and Reformation ........................................................27

    13.12. Prohibition Against Prepayment Penalties .....................................28

    13.13. Fractional Dollars .........................................................................28

13.14. Payment of Statutory Fees and Filing of Quarterly Reports ..........................28
13.15. Governing Law .................................................................28
13.16. Special Tax Issues ...........................................................28
13.17. Conflicts Between Plan and Confirmation Order ................................28
13.18. Severability .................................................................29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

v

# ARTICLE I
## INTRODUCTION

Pursuant to 11 U.S.C. § 1129, Dunlap Oil Company, Inc. ("DOC") and Quail Hollow Inn, LLC ("QHI" and together with DOC, the "Debtors"), the debtors and debtors-in-possession in the above-captioned bankruptcy cases, hereby submit this *Second Amended Joint Plan of Reorganization dated December 27, 2013* (the "Plan") in the above-captioned jointly administered Chapter 11 cases (together, the "Case"). The Plan provides for the satisfaction of Allowed Claims against the Debtors in accordance with the distributive priorities allowed by the Bankruptcy Code.

# ARTICLE II
## DEFINITIONS

Except as otherwise provided in this Plan, all terms used herein shall have the meanings attributable to such terms under Title 11 of the United States Code, as amended (the "Bankruptcy Code"), the applicable Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the District of Arizona (the "Local Bankruptcy Rules"). For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

2.1.    <u>Administrative Expense Claim</u> shall refer to and mean: (a) every cost or expense of administration of the Bankruptcy Case, including any actual and necessary post-petition expenses of preserving the Estates, entitled to priority under Sections 503(b) and 507(a)(2) of the Bankruptcy Code; (b) any actual and necessary post-petition expenses of operating the Debtors; (c) all Professional Charges approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with Sections 105, 330, 331, and 503(b) of the Bankruptcy Code; and (d) all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code.

2.2.    <u>Allowed</u> when used as an adjective preceding the words "Claims" or "Equity Interest" shall refer to and mean any Claim against or Equity Interest in the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against the Debtors, or, if no proof of Claim or Equity Interest is filed, which has been or hereafter is listed by the Debtors as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed

1

timely and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, or except as otherwise provided under § 506(b) of the Bankruptcy Code, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

2.3.     Allowed Administrative Expense Claim shall refer to and mean any Administrative Expense allowed under Section 507(a)(2) of the Bankruptcy Code.

2.4.     Allowed Secured Tax Claim shall refer to and mean every Claim of any federal, state, or local governmental unit, which is asserted by such governmental unit to be secured by property of the Estate by operation of applicable non-bankruptcy laws, including, but not limited to, every such Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, but only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and the value of the interest of the governmental unit holding such Claim against the Debtor.

2.5.     Allowed Unsecured Claim shall refer to and mean an Unsecured Claim that is or has become an Allowed Claim.

2.6.     Assets shall refer to and mean the aggregate assets, of any kind, of the Debtors and their Estates.

2.7.     Ballot shall refer to and mean the form(s) distributed to creditors holding claims in an impaired Class, or holders of interests in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

2.8.     Bankruptcy Code or Code shall refer to and mean the Bankruptcy Reform Act of 1978 (11 U.S.C. Sections 101, et seq.), as amended, and as codified in Title 11 of the United States Code.

2.9.     Bankruptcy Court shall refer to and mean the United States Bankruptcy Court for the District of Arizona having jurisdiction over the Debtor's Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

2.10.     Bankruptcy Rules shall refer to and mean the rules and forms of practice and procedure in bankruptcy, promulgated under 11 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

2.11.     Bar Date shall refer to and mean the applicable bar date by which a proof of claim must be filed with the Court, as established by an order of the Bankruptcy Court.

2

2.12.  <u>Business Day</u> shall refer to and mean and refer to any day except Saturday, Sunday, and any other day on which commercial banks in Arizona are authorized by law to close.

2.13.  <u>Cash</u> shall refer to and mean legal tender of the United States of America or equivalents, as well as any and all foreign currencies.

2.14.  <u>Cash New Value Contribution</u> shall refer to and mean the amount of $250,000 in cash that the Equity Interest Holders of DOC will contribute on the Effective Date.

2.15.  <u>Case</u> shall refer to and mean the Debtors' jointly administered cases under Chapter 11 of the Bankruptcy Code, Case Nos. 4:12-bk-23252 (DOC) and 4:12-bk-23256 (QHI) jointly administered under Case No. 4:12-bk-23252.

2.16.  <u>CCB</u> shall refer to and mean Canyon Community Bank, N.A. and any successor in interest to CCB.

2.17.  <u>CCB Collateral</u> shall refer to and mean those Assets of the Debtors on which CCB holds a valid, enforceable, and unavoidable Lien other than the Grand Texaco and Pinetop Chevron that were turned over to CCB during the course of the Case for an aggregate credit of $1,948,788 against the Allowed Secured Claim of CCB.

2.18.  <u>Claim</u> shall refer to and mean a claim against the Debtors as defined in Section 101(5) of the Bankruptcy Code.

2.19.  <u>Claimant</u> shall refer to and mean the holder of a Claim.

2.20.  <u>Class</u> shall refer to and mean a class of holders of Allowed Claims or interests described in Article III of the Plan.

2.21.  <u>Confirmation</u> shall refer to and mean the entry of an Order by the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of the Bankruptcy Code.

2.22.  <u>Confirmation Date</u> shall refer to and mean the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

2.23.  <u>Confirmation Hearing</u> shall refer to and mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

3

2.24. <u>Confirmation Order</u> shall refer to and mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.25. <u>Contested</u> when used with respect to a Claim, shall refer to and mean a Claim against the Debtor, other than an Allowed Administrative Claim, (i) that is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated, or (ii) that is the subject of a proof of claim to which an objection has been or may be filed.

2.26. <u>Cox</u> shall refer to and mean William R. Cox, Cheryl J. Cox and Cox Investment Group, LLC, collectively.

2.27. <u>Cox Collateral</u> shall refer to and mean those Assets of the Debtors on which Cox holds a valid, enforceable, and unavoidable Lien other than the Tucson Office and Payson Chevron that were deeded to Cox during the course of the Case for an aggregate credit of $1,150,000 against the Allowed Secured Claim of Cox.

2.28. <u>Creditor</u> shall refer to and mean any person that has a Claim against the Debtors that arose on or before the Petition Date or a Claim against the Estates of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

2.29. <u>Debt</u> shall refer to and mean the same as the meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

2.30. <u>Debtors</u> shall refer to and mean Dunlap Oil Company, Inc. ("<u>DOC</u>") and Quail Hollow Inn, LLC ("<u>QHI</u>").

2.31. <u>Deficiency Claim</u> shall refer to and mean that portion of a Secured Claim that exceeds the value of the Lien on the Debtors' Assets that secures it, and thus is rendered an Unsecured Claim pursuant to Bankruptcy Code Section 506(a).

2.32. <u>Disallowed Claim</u> shall refer to and mean a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order.

2.33. <u>Disclosure Statement</u> shall refer to and mean and refer to the Disclosure Statement filed by the Debtors as required pursuant to Section 1125 of the Bankruptcy Code.

2.34. <u>Disputed Claim</u> shall refer to and mean any Claim, or portion thereof, that is not an Allowed Claim or a Disallowed Claim.

2.35. <u>DOC</u> shall refer to and mean Dunlap Oil Company, Inc., an Arizona corporation.

4

2.36.  Effective Date shall refer to and mean the date which the Confirmation Order has become a Final Order, which is expected to be within fifteen (15) calendar days after the Confirmation Order.

2.37.  Estate shall refer to and mean the estate of the Debtors created in accordance with Section 541 of the Bankruptcy Code.

2.38.  Executory Contract shall refer to and mean every unexpired lease and other contract that is subject to being assumed or rejected by the Debtors under Section 365 of the Bankruptcy Code pursuant to the Plan or pursuant to separate motion.

2.39.  Final Order shall refer to and mean any order of the Bankruptcy Court as to which (a) the time for appeal has expired and no appeal has been timely taken; (b) any appeal that has been timely taken has been finally determined or dismissed; or (c) an appeal has been timely taken, but such order remains in full force and effect and has not been stayed.

2.40.  General Unsecured Claim shall refer to and mean every Unsecured Claim against the Debtors (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim that is the undersecured portion of any Secured Claim), which is not an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, or a Secured Claim.

2.41.  Impaired when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall refer to and mean that the Plan alters the legal, equitable, or contractual rights of the members of that class.

2.42.  Jackson shall refer to and mean Jacksons Food Stores, Inc. dba Jackson Oil.

2.43.  Jackson Supply Agreement shall refer to and mean the Supply Agreement entered into by DOC and Jackson on or about March 15, 2010.

2.44.  Lien shall refer to and mean "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.45.  Net Proceeds shall refer to and mean an amount equal to the gross sales price less usual and customary closing costs and fees (including, without limitation, sales commissions of not more than six percent (6%), title, escrow, recording, and document preparation fees), less any real property taxes, interest, and penalties due and owing at the time of the sale, and less all other actual costs of sale.

2.46.  New Value Contribution shall refer to and mean, collectively, the Cash New Value Contribution and the Real Property New Value Contribution to be made by the Equity Security Holders on the Effective Date.

5

2.47.   Petition Date shall refer to and mean October 24, 2012.

2.48.   Pineda shall refer to and mean Pineda Grantor Trust II, purported successor in interest to BBVA Compass Bank, N.A.

2.49.   Pineda Collateral shall refer to and mean those Assets of the Debtors on which Pineda holds a valid, enforceable, and unavoidable Lien, other than the Benson Little General and Sierra Vista Chevron that were turned over to Pineda during the course of the Case for an aggregate credit of $274,149 against the Allowed Secured Claim of Pineda.

2.50.   Plan shall refer to and have the meaning set forth herein.

2.51.   Prime Rate shall refer to and mean, at any time, the rate of interest quoted in the Wall Street Journal, Money Rates Section, as the "Prime Rate." (currently defined as the base rate on corporate loans posted by at least seventy five percent (75%) of the nation's thirty largest banks).  In the event that the Wall Street Journal quotes more than one rate, or a range of rates as the Prime Rate, then the Prime Rate shall refer to and mean the average of the quoted rates.  In the event that the Wall Street Journal ceases to publish the Prime Rate, then the Prime Rate shall be the average Prime Rate of the three largest U.S. money center commercial banks.

2.52.   Priority Tax Claim shall refer to and mean any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under Section 507(a)(8).

2.53.   Proceedings shall refer to and mean the Chapter 11 Case of the Debtors.

2.54.   Professional Persons shall refer to and mean and refer to any professional employed in the Chapter 11 Case pursuant to Section 327 or Section 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Case pursuant to Sections 503(b)(3)(F) and (b)(4) of the Bankruptcy Code.

2.55.   Professional Fee Claim shall refer to and mean and refer to a claim by any and all Professional Persons as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

2.56.   Pro Rata shall refer to and mean, with respect to an amount of Cash to be paid or distributed to a Creditor with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claims of such Person in the indicated Class to the aggregate dollar amount of all Claims in the indicated Class (including, in each such calculation, the full amount of Disputed Claims

in the Class which have been asserted or are otherwise pending and which have not yet been Allowed or otherwise disposed of).

2.57.  <u>QHI</u> shall refer to and mean Quail Hollow Inn, L.L.C., an Arizona limited liability company.

2.58.  <u>Real Property New Value Contribution</u> shall refer to and mean the fee simple interests in the Benson Little General and Benson Chevron that the Equity Interest holders of DOC will contribute on the Effective Date in the event that the Plan is confirmed.

2.59.  <u>Reorganized Debtor</u> shall refer to and mean reorganized Dunlap Oil Company and/or Quail Hollow Inn from and after the Effective Date.

2.60.  <u>Returned Properties</u> shall refer to and mean property returned to creditors pursuant to stipulated orders entered in this Case:  For CCB, the Grand Texaco and Pinetop Chevron (Dkt. #356); for Pineda, the Benson Little General and Sierra Vista Chevron (Dkt. #345); for Cox, the Payson Chevron and Tucson Office (Dkt. #247); and for Magnussen, the Esperanza Texaco (Dkt. #336).

2.61.  <u>Secured Claim</u> shall refer to and mean and refer to a Claim which is secured by a valid, perfected and unavoidable Lien in the Debtors' Assets or which expressly attached to the Net Proceeds of Sold Assets pursuant to an Order of the Court, as of the Debtors' Petition Date, but only to the extent of the value of the Debtors' interest in such property, as determined by agreement by the Debtors and the holder of such claim or by the Bankruptcy Court by a Final Order pursuant to section 506(a) of the Bankruptcy Code. In accordance with the Section 506(a) of the Bankruptcy Code, Secured Claim specifically excludes that portion of a Claim of a holder of a Lien against the property of the Debtors to the extent such holder's interest in the property is less than the amount of such Claim.  To the extent of any deficiency in the value of the interest of the holder of such Secured Claim in such property, such deficiency is a General Unsecured Claim, unless otherwise provided for by order of the Bankruptcy Court.

2.62.  <u>Sold Assets</u> shall refer to and mean the Debtors' Assets sold after the Petition Date pursuant to an Order of the Court.

2.63.  <u>Stipulated CCB Values</u> shall refer to and mean the values for the CCB Collateral and Returned Properties stipulated to by DOC and CCB as set forth in the Joint Pretrial Statement (Dkt. #300).

2.64.  <u>Stipulated Pineda Values</u> shall refer to and mean the values for the Pineda Collateral and Returned Properties stipulated to by the Debtors and Pineda as set forth in the Joint Pretrial Statement (Dkt. #300).

7

2.65.   Unsecured Claim shall refer to and mean any Claim against the Debtors which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for the Debtors, and which is not (i) a Secured Claim pursuant to Section 506 of the Bankruptcy Code, or (ii) a Claim entitled to priority under Sections 503 or 507 of the Bankruptcy Code.  "Unsecured Claim" shall include all Claims against the Debtors that are not expressly otherwise dealt with in the Plan.

2.66.   Unsecured Distribution Amount shall refer to and mean semi-annual pro rata distributions of the cash flows generated and amounts received by the Debtors, after payment of operating expenses and installment payments to secured creditors, for a period of five years after the Effective Date.  Upon receipt of their respective pro rata portions of the Unsecured Distribution Amount, all Allowed Class 3 Unsecured Claims will be deemed paid and discharged in full five years after the Effective Date.

2.67.   Interpretation, Rules of Construction, and Other Terms.

> (a)   Any term used in this Plan that is not defined herein, whether in this Article II or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules and shall be construed in accordance with the rules of construction used in the Bankruptcy Code.

> (b)   The words "herein," "hereto," "hereunder," and others of similar importance, refer to the Plan as a whole and not to any particular article or clause contained in this Plan.

> (c)   Unless specified otherwise in a particular reference, a reference in this Plan to an article is a reference to that article of this Plan.

> (d)   Unless otherwise provided for, any reference in this Plan to an existing document or instrument means such document or instrument as it may have been amended, modified, or supplemented from time to time.

> (e)   For purposes of this Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.

> (f)   In addition to the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to this Plan.

> (g)   In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

> (h)   All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Court.

> (i)   Where Claims are divided into subclasses in this Plan, each subclass will be

8

considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1.  **General Classification Provisions.** For purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims) and Equity Interests shall be classified as set forth in this Article III of the Plan.  All Claims and Equity Interests are classified under the Plan as hereafter stated in this Article III; provided, however, that a Claim or Equity Interest will be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class.  As of the Confirmation Hearing, any Class of Claims that does not contain any Creditor's Claim will be deemed deleted automatically from the Plan; and any Class of Claims that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.  A Claim or Equity Interest is in a particular Class only to the extent the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest as defined herein.

3.2.  **Classification of Claims and Interests.** The Plan classifies Claims and Interests in various Classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each Class of Claims or Equity Interests are impaired or unimpaired.  The Plan provides the treatment each Class will receive under the Plan.   In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims are not set forth in Classes and are not entitled to vote on the Plan.  The Allowed Claims against the Debtors' Estates are divided into the following classes:

3.2.1.  Class 1 (Secured Tax Claims). Class 1 consists of all Allowed Secured Tax Claims against the Debtors.

3.2.2.  Class 2 (Secured Claims). Class 2 consists of subclasses of Allowed Secured Claims against the Debtors other than Secured Tax Claims, in the amounts set forth below for each respective secured creditor.

3.2.3.  Class 3 (Unsecured Claims). Class 3 consists of all Allowed Unsecured Claims held against the Debtors by all Unsecured Creditors, including deficiency claims of secured creditors.

9

3.2.4.  Class 4 (Equity Security Interests in DOC). Class 4 consists of the equity security interests of the shareholders of DOC.

3.2.5.  Class 5 (Membership Interests in QHI). Class 5 consists of the membership interests of the members of QHI.

Where Claims are divided into subclasses in this Plan, each subclass will be considered to be a separate class for all confirmation purposes, including treatment and voting on the Plan.

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMANTS
## IMPAIRED OR UNIMPAIRED UNDER THE PLAN

4.1.  **Unimpaired Classes of Claims and Interests.**

The following Classes are not impaired under the Plan and are deemed to have accepted the Plan under the provisions of Section 1126(f) of the Bankruptcy Code:

Class 4 (Equity Security Interests in DOC)
Class 5 (Membership Interests in QHI)

The Debtors will not solicit acceptance of the Plan from Class 4 or Class 5.

4.2.  **Impaired Classes of Claims and Interests.**

The following Classes are impaired under the Plan as provided in Section 1124 of the Bankruptcy Code, and the Debtors will seek acceptance of the Plan from these Classes:

Class 1 (Secured Tax Claims)
    a.    Class 1(a) County Secured Tax Claims
    b.    Class 1(b) ADOR Secured Tax Claims
    c.    Class 1(c) IRS Secured Tax Claims
    d.    Class 1(d) Returned Properties Secured Tax Claims
Class 2 (Secured Claims)
    a.    Class 2(a) Secured Claim of Pineda
    b.    Class 2(b) Secured Claim of CCB
    c.    Class 2(c) Secured Claim of Cox
    d.    Class 2(d) Secured Claim of Jackson
Class 3 (Unsecured Claims)
    a.    Class 3(a) Unsecured Deficiency Claims
    b.    Class 3(b) General Unsecured Claims
    c.    Class 3(c) Related Party Unsecured Claims

10

In accordance with the requirements of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims are not set forth in Classes and are not entitled to vote on the Plan.

**ARTICLE V**
**PROVISIONS FOR TREATMENT OF**
**UNCLASSIFIED CLAIMS UNDER THE PLAN**

5.1.  **Administrative Claims.**  Every Creditor holding an Allowed Administrative Claim against the Debtors will be paid, in full satisfaction of its Allowed Claim: (a) in Cash on or before the Effective Date if the Claim is then an Allowed Claim; (b) in Cash when and if the Claim becomes an Allowed Claim after the Effective Date; or (c) as otherwise agreed in writing by the Creditor holding the Allowed Administrative Claim or ordered by the Bankruptcy Court.  Without limiting the generality of the foregoing, Administrative Claims relating to post-petition taxes accrued and due and owing on properties returned to CCB and Pineda pursuant to §7.2 below will be paid on the Effective Date.  Administrative Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Administrative Claims.

5.2.  **Administrative Claims Bar Date.**  Proofs of claim (or, for Professional Charges, fee applications) requesting payment of administrative costs and expenses incurred prior to the Effective Date pursuant to Sections 507(a)(2) and 503(b) of the Bankruptcy Code must be served and filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date; provided, however, that proofs of claim will not be required with respect to any unpaid post-petition operating expenses incurred in the normal course of the Debtors' business prior to the Effective Date.  Any such Claim that is not served and filed within this time period will be forever barred.  Any Claims for fees, costs, and expenses incurred by any Chapter 11 Professionals after the Effective Date will be paid in the ordinary course of the Debtors' business.

5.3.  **Priority Tax Claims.**  To the extent Priority Tax Claims exist on the Effective Date, holders of Allowed Priority Tax Claims will be (a) paid in full on the later of the Effective Date or the allowance of the Claim, or (b) over a period not exceeding five (5) years after the Petition Date.  Priority Tax Claims will be allowed in the principal amount of the tax due as of the Petition Date, with interest at the applicable statutory rate, without penalties.  In the event that the Debtors elect to make periodic payments rather than pay any or all Priority Tax Claims in full on the Effective Date, Priority Tax Claims will be paid: (i) in equal monthly installments; (ii) with interest at an appropriate rate to be determined in accordance with 11 U.S.C. § 511; (iii) with payments beginning within thirty days after the Effective Date, (iv) all in accordance with 11 U.S.C. § 1129(a)(9).

11

The failure of the Debtor to comply with the provisions of the Plan concerning liability for Allowed Priority Tax Claims, which includes but is not limited to the failure to make full and timely payments, shall constitute a default under the Plan. If the Debtors fail to cure the default within ten (10) days after written notice of default delivered to the Debtors and to their counsel, the entire balance due and owing on the Allowed Priority Tax Claim shall be immediately due. In the event of an uncured default, holders of Allowed Priority Tax Claims may enforce the entire amount of their claim and exercise any and all rights and remedies under applicable non-bankruptcy law, including but not limited to State law collection procedures and any other such relief as may be deemed appropriate by the Bankruptcy Court.

5.3.1. <u>ADOR Priority Tax Claims</u>. The ADOR Priority Tax Claims will be paid as follows:

| Claim Type | Source | Amount | Monthly Payment |
|---|---|---|---|
| Priority | POC #18 | $115,289.62 | **$2,552** |
| Priority | POC #2 (QHI) | $22,558.52 | **$499** |

5.3.2. <u>IRS Priority Tax Claim</u>. The IRS Priority Tax Claim will be paid as follows:

| Claim Type | Source | Amount | Monthly Payment |
|---|---|---|---|
| Priority | POC#9 | $269,555.59 | **$4,843.56** |

**ARTICLE VI**
**PROVISIONS FOR TREATMENT OF**
**CLAIMS NOT IMPAIRED UNDER THE PLAN**

6.1. **Class 4 (Equity Security Interests in DOC).**

The shareholders of DOC will retain their respective equity security interests in DOC. Class 4 Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Class 4 Claims.

6.2. **Class 5 (Membership Interests in QHI).**

The members of QHI will retain their respective equity security interests in QHI. Class 5 Claims are unimpaired pursuant to the Plan and votes to accept or reject the Plan will not be solicited from Creditors holding Class 5 Claims.

12

# ARTICLE VII
## PROVISIONS FOR TREATMENT OF
## CLAIMS IMPAIRED UNDER THE PLAN

### 7.1.  Class 1 (Secured Tax Claims).

The Class 1 Claims are for real estate and personal property taxes assessed by various Arizona Counties against the Debtors' Property, as well as secured tax claims asserted by the Arizona Department of Revenue ("ADOR") and the Internal Revenue Service ("IRS").  Holders of Allowed Class 1 Claims will retain their liens on any Assets of the Debtors that serve as security for repayment of Allowed Class 1 Claims.  Class 1 Claims are impaired and holders of Allowed Class 1 Claims will be entitled to vote to accept or reject the Plan.  Allowed Class 1 Secured Tax Claims will be allowed in the principal amount of the tax due as of the Petition Date, with interest at the applicable statutory rate, and applicable penalties.

#### 7.1.1.  Class 1(a) County Secured Tax Claims.

Class 1(a) Secured Tax Claims of the various Counties will be paid: (i) in equal monthly installments over a period not exceeding five (5) years from the Effective Date; (ii) with interest at 16%; and (iii) with payments beginning within thirty (30) days after the Effective Date as follows:

| Property | Claimant | Amount | Monthly Payment |
|---|---|---|---|
| Willcox Office<br>759 S. Haskell<br>Willcox, AZ | Cochise Co.<br>(POC #4) | $10,950 | **$266** |
| San Jose Chevron<br>1288 S. Hwy 92<br>Bisbee, AZ | Cochise Co.<br>(POC #4) | $19,831 | **$482** |
| Sierra Vista Little General<br>1860 S. Hwy 92<br>Sierra Vista, AZ<br>SV Vacant Land - | Cochise Co.<br>(POC #4)<br><br>Cochise Co.<br>(POC #4) | $83,135<br><br><br>$12,792 | **$2,021**<br><br><br>**$311**<br>**Total = $2,332** |
| Dunlap Plaza<br>900 W. Rex Allen Dr.<br>Willcox, AZ | Cochise Co.<br>(POC #4) | $107,982 | **$2,626** |
| Willcox Truck Plaza<br>1190 W. Rex Allen Dr<br>Willcox, AZ | Cochise Co.<br>(POC #4) | $68,501 | **$1,666** |
| Quail Hollow Inn<br>699 N. Ocotillo<br>Benson, AZ | Cochise Co.<br>(QHI POC #1) | $226,613 (includes both real and personal property taxes pursuant to Cochise County POC #1) | **$5,511** |
| Benson Chevron<br>680 N. Ocotillo<br>Benson, AZ | Cochise Co. | $18,560<br>(est. RE and PP  10/11) | **$451** |
| Cochise County | Cochise Co. | TOTAL = $2,595.20 | Paid on or about |

13

| Property | Claimant | Amount | Monthly Payment |
|---|---|---|---|
| Personal Property Taxes pursuant to Cochise County Proof of Claim for DOC | (POC #4) | | December 16, 2013 pursuant to Stipulated Truck Sale Order (Dkt. #468) |
| **TOTAL** | **Cochise Co.** | **$550,959** | **$13,335** |
| | | | |
| Ajo Chevron 2001 N. Ajo-Gila Bend Hwy Ajo, AZ | Pima Co. (POC #34) | $246 | To be paid on Effective Date |
| Tucson Office 4231 S. Station Master Dr., Tucson, AZ (taxes paid according to Settlement with Cox) | Pima Co. (POC #23) Pima Co. (POC #38) | $32,206 $2,110 | **$783** **$51** **Total = $834** |
| Green Valley SuperCenter 171 W. Continental Rd Green Valley, AZ (and adjacent vacant land) | Pima Co. (POC #27, 28, 29, 31, 32) Pima Co. (POC #36) | $83,119 $2,188 | **$2,021** **$53** **Total = $2,074** |
| Marana Chevron 13960 N. Sandario Marana, AZ | Pima Co. (POC #24) Pima Co. (POC #33) | $89,762 $525 | **$2,183** **$13** **Total = $2,196** |
| **TOTAL** | **Pima Co.** | **$210,156** | **$5,104** |
| | | | |
| Payson Chevron 709 E. Hwy 260 Payson, AZ (taxes paid according to Settlement with Cox) | Gila Co. Havin Trust (purchased tax cert.) (POC #13) | $43,601 | **$1,060** |
| **TOTAL** | **Gila Co.** | **$43,601** | **$1,060** |
| | | | |
| DOC's Food Stop 2371 W. Hwy 70 Thatcher, AZ | Graham Co. (POC#20) | $8,361 | $203 |
| **TOTAL** | **Graham Co.** | **$8,361** | **$203** |

7.1.2. <u>Class 1(b) ADOR Secured Tax Claims</u>.

Class 1(b) Secured Tax Claims of ADOR will be paid (i) in equal monthly installments over a period not exceeding five (5) years from the Petition Date; (ii) with interest at 3%; and (iii) with payments beginning within thirty days after the Effective Date as follows:

| Claim Type | Source | Amount | Monthly Payment |
|---|---|---|---|
| Secured | POC #18 | $79,526.46 | **$1,760** |

14

### 7.1.3. <u>Class 1(c) IRS Secured Tax Claims.</u>

Class 1(c) Secured Tax Claims of the IRS will be treated and paid as follows:

a.   The Class 1(c) IRS Secured Claim will be Allowed in the amount of $295,454.77.

b.   The IRS Secured Tax Claim will accrue interest at the rate of 3% compounded daily;

c.   The IRS will retain its lien on all of Debtor's personal property located in Arizona and all of Debtor's real property located in Cochise County, Arizona, which includes real property in Willcox, Bisbee, Sierra Vista and Benson.

d.   The default provisions set forth in Article V, § 5.3 of the Plan shall apply to both the IRS unsecured claim and secured claim; and

e.   Payments on the IRS Secured Claim will be made on a monthly basis, according to a 25 year amortization schedule, with a balloon payment due on a date not exceeding five (5) years from the Effective Date.

f.   Payments due under the Plan will be mailed to the Internal Revenue Service; Attn: Linda Kittrell; 4041 N. Central Avenue, Mail Stop 5014PHX, Phoenix, Arizona 85012.

g.   Accordingly, the Class 1(c) IRS Secured Tax Claim will be paid as follows:

| Claim Type | Amount | Treatment | Monthly Payment |
|---|---|---|---|
| Secured | $295,454.77 | Retains lien and paid according to Class 1(c) Secured Claims – on a 25 year amortization schedule with interest at the rate of 3% per annum, with a balloon payment in five (5) years from the Effective Date or upon the sale of Benson Chevron. | **$1,727.20** |

### 7.1.4. <u>Class 1(d) (Properties returned to secured creditors under the Plan).</u>

Holders of Allowed Class 1(d) Secured Tax Claims against Returned Properties will retain their liens on the Returned Properties and will be paid by Pineda, CCB, or Magnussen as reflected in the table immediately below:

| Property | Claimant | Amount | Secured Creditor |
|---|---|---|---|
| Benson Little General 696 N. Ocotillo Benson, AZ | Cochise Co. | $24,980 (estimated RE-10/11/12) $7,368 (estimated PP-10/11/12) | Pineda |

15

| Property | Claimant | Amount | Secured Creditor |
|---|---|---|---|
| Sierra Vista Chevron<br>1796 E. Fry Blvd<br>Sierra Vista, AZ | Cochise Co.<br>(POC #4) | $18,503 | Pineda |
| Grand Texaco w/ DQ<br>1051 W. Beta Rd<br>Sahuarita, AZ (and<br>adjacent vacant land) | Pima Co.<br>(POC #25, 30)<br>Pima Co.<br>(POC #35) | $140,420<br><br>$3,067 | CCB |
| Esperanza Texaco<br>61 W. Esperanza<br>Green Valley, AZ | Pima Co.<br>(POC #26)<br>Pima Co.<br>(POC #37) | $33,742<br><br>$2,188 | Magnussen |
| Pinetop Chevron<br>971 E. White Mtn Blvd.<br>Pinetop, AZ | Navajo Co. | $28,964 (estimated<br>RE-10/11/12)<br>$8,761 (estimated PP-12) | CCB |
| Payson Chevron<br>709 E. Hwy 260<br>Payson, AZ | Gila Co.<br>Havin Trust<br>(purchased tax<br>cert.)<br>(POC #13) | $43,601 | Cox - The taxes due and owing on the Payson Chevron will be satisfied by the Debtor in accordance with the payment terms set forth in Class 1(a), as a part of the settlement reached between the Debtors and Cox. |
| Tucson Office<br>4231 S. Station Master<br>Dr., Tucson, AZ | Pima Co.<br>(POC #23)<br>Pima Co.<br>(POC #38) | $32,206<br><br>$2,110 | Cox - The taxes due and owing on the Tucson Office will be satisfied by the Debtor in accordance with the payment terms set forth in Class 1(a), as a part of the settlement reached between the Debtors and Cox. |

7.2.   **Class 2 (Secured Claims).**

Allowed Class 2 Secured Claims will be satisfied the sale of certain pieces of Collateral and payment of the Lien interests held by Secured Creditors with respect to sold Collateral, and a restructured payment of the remaining balance as either a Class 2 Allowed Secured Claim or a Class 3(a) Unsecured Deficiency Claim.

Holders of Allowed Class 2 Secured Claims will retain their Liens on the Collateral that serves as security for repayment of Allowed Class 2 Claims as further set forth below, pending payment in full.  Class 2 Claims are impaired, and Holders of Allowed Class 2 Claims will be entitled to vote to accept or reject the Plan.

16

After taking into account the Stipulated Value credits set forth below, to the extent that the Holder of an Allowed Class 2 Secured Claim remains secured after the return of a portion of its collateral, the balance will be paid in monthly installments according to a twenty-five year amortization schedule, with interest at the rate of 5% per annum, and with a balloon payment on the 60th month following the Effective Date. The monthly payment amount for the first 59 installments (the "Monthly Payment") will be due on the first of each month beginning with the first day of the month following the Effective Date. There shall be no penalty for pre-payment of any or all Class 2 Allowed Secured Claims. To the extent that any secured creditor is not fully secured for the remaining balance after the return of Collateral, any Deficiency Claim will be treated as a Class 3(a) Unsecured Deficiency Claim.

The Class 2 Allowed Secured Claims will be secured by the existing deeds of trust and security interests held by the respective creditors as of the Petition Date, with the exception of CCB which will be granted an additional first position deed of trust on the Ajo Station in exchange for the release of its deed of trust relating to the Esperanza Station, as security for repayment of the Class 2 Allowed Secured Claims.

### 7.2.1. Class 2(a) Secured Claim of Pineda.

The Debtors have already returned to Pineda the Benson Little General and Sierra Vista Chevron, with Stipulated Pineda Values and secured tax claims according to the books and records of the Debtors as follows:

| Property | Stipulated Values | Secured Taxes | Net Credit |
|---|---|---|---|
| Benson Little General 696 N. Ocotillo Benson, AZ | $140,000 | $24,980 (est. RE-10/11/12) $7,368 (est. PP-10/11/12) | $107,652 |
| Sierra Vista Chevron 1796 E. Fry Blvd Sierra Vista, AZ | $185,000 | $18,503 | $166,497 |
| **TOTAL** | **$325,000** | **$50,851** | **$274,149** |

With respect to the properties retained by the Debtors under the Plan, the Debtors and Pineda have stipulated to the following values (with secured tax claims referenced according to the books and records of the Debtors):

| Property | Stipulated Values | Secured Taxes | Net Secured Claim Amount for Pineda |
|---|---|---|---|
| Willcox Office 759 S. Haskell Willcox, AZ | $350,000 | $10,950 | $339,050 |
| San Jose Chevron 1288 S. Hwy 92 Bisbee, AZ | $600,000 | $19,831 | $580,169 |
| Sierra Vista Little Gen. 1860 S. Hwy 92 Sierra Vista, AZ SV Vacant Land | $820,000 | $83,135 $12,792 | $724,073 |

17

| Property | Stipulated Values | Secured Taxes | Net Secured Claim Amount for Pineda |
|---|---|---|---|
| Marana Chevron 13960 N. Sandario Marana, AZ | $700,000 | $89,762 $525 | $609,713 |
| Dunlap Plaza 900 W. Rex Allen Dr. Willcox, AZ | $650,000 | $107,982 | $542,018 |
| Quail Hollow Inn 699 N. Ocotillo Benson, AZ | $1,900,000 | $226,613 | $1,673,387 |
| **TOTALS:** | **$5,020,000** | **$551,590** | **$4,468,410** |

As of the Effective Date (and if QHI is not sold by the Effective Date), after deducting the secured taxes from the Stipulated Pineda Values, Pineda is left with an Allowed Secured Claim in the amount of $4,468,410. The Pineda Allowed Class 2(a) Secured Claim will be paid on a 25-year amortization schedule with interest at the rate of 5% per annum, resulting in an initial Monthly Payment of **$26,122**.

Upon the sale of QHI, Pineda will receive, based on the Stipulated Pineda Value, the net amount of $1,673,387 after payment of secured taxes, and the balance of the Allowed Secured Claim of Pineda will be reduced accordingly, resulting in a remaining Monthly Payment amount of approximately **$16,500** (depending on exact remaining balance at time of the QHI sale).

The remainder of the Pineda claim will be treated as a Class 3(a) Unsecured Deficiency Claim as further set forth below.

7.2.2.  Class 2(b) Secured Claims of CCB.

The Debtors have already returned to CCB the Grand Texaco and Pinetop Chevron, with Stipulated Values and secured tax claims according to the books and records of the Debtors as follows:

| Property | Stipulated Values | Secured Taxes | Net Credit |
|---|---|---|---|
| Grand Texaco | $1,600,000 | $143,487 | $1,456,513 |
| Pinetop Chevron | $530,000 | $28,964 (est. RE-10/11/12) $8,761 (est. PP-12) | $492,275 |
| **TOTAL** | **$2,130,000** | **$181,212** | **$1,948,788** |

With respect to the property retained by the Debtors under the Plan, CCB and the Debtors have stipulated to the following values (with secured tax claims referenced according to the books and records of the Debtors):

18

| Property | Stipulated Values | Secured Taxes | Net Secured Claim Amount for CCB |
|---|---|---|---|
| Green Valley SuperCenter | $2,500,000 | $83,119 $2,188 | $2,414,693 |
| Rolling Stock[1] | $144,145 | None (paid pursuant to Stipulated Truck Sale Order; Dkt. #468) | $144,415 |
| **TOTAL** | **$2,644,145** | **$85,307** | **$2,558,838** |

After deducting the secured taxes, CCB is left with an Allowed Secured Claim in the amount of $2,558,838. The CCB Allowed Class 2(b) Secured Claim will be paid on a 25-year amortization schedule with interest at the rate of 5% per annum, resulting in a Monthly Payment of **$14,959** ($14,116 Real Property and $843 Rolling Stock).

The remainder of the CCB claim will be treated as a Class 3(a) Unsecured Deficiency Claim as further set forth below.

### 7.2.3. Class 2(c) Secured Claims of Cox.

The Allowed Class 2(c) Secured Claim of Cox shall be treated in accordance with the Parties' separate Settlement approved by the Court. Dkt. #202, 247 (the "Cox Settlement"). A summary of the materials terms of the Cox Settlement is provided below:

| Property | Stipulated Values | Secured Taxes | Net Credit |
|---|---|---|---|
| Payson Chevron 709 E. Hwy 260 Payson, AZ | $700,000 | The pre-petition taxes due and owing on the Payson Chevron will be satisfied by DOC in accordance with the payment terms set forth in Class 1(a), as a part of the Settlement reached between the Debtors and Cox. | $700,000 |
| Tucson Office 4231 S. Station Master Dr., Tucson, AZ | $450,000 | The pre-petition taxes due and owing on the Tucson Office will be satisfied by DOC in accordance with the payment terms set forth in Class 1(a), as a part of the Settlement reached between the Debtors and Cox. | $450,000 |
| **TOTAL** | **$1,150,000** | **Included in Class 1(a)** | **$1,150,000** |

---

[1] The original Stipulated CCB Value for the Rolling Stock was $416,800 (*see* JPTS, Dkt. #300). Since the filing of the JPTS, and with the consent of CCB, DOC sold a significant portion of the Rolling Stock and proceeds in the amount of $272,654.80 were paid to CCB. Accordingly, the remaining portion of the CCB Secured Claim relating to the Rolling Stock is now $144,145.

Following the transfer of the Payson Chevron and the Tucson Office to Cox, Cox holds a Class 2(c) Allowed Secured Claim in the amount of $807,055 (the "Remaining Cox Allowed Secured Claim"), which will continue to be secured by the existing first position deed of trust held by Cox on the real property located at 1190 W. Rex Allen Drive, Willcox, Arizona ("Willcox Truck Plaza").

The Remaining Cox Allowed Secured Claim will be paid in monthly installments according to a twenty-five year amortization schedule, with interest at the rate of five percent (5%) per annum, and with a balloon payment sixty (60) after the Effective Date. The initial monthly payment of the Remaining Cox Allowed Secured Claim for the first 59 installments shall be **$4,717**. The monthly payment may increase based on the amount of outstanding Payson Chevron Taxes or Tucson Office Taxes at the time of sale by the Coxes. There shall be no penalty for pre-payment of the Class 2(c) Cox Allowed Secured Claim.

### 7.2.4. Class 2(d) Secured Claims of Jackson.

The Class 2(d) Allowed Secured Claim of Jackson totals approximately $218,605.99, and is secured by the existing deed of trust held by Jackson on the DOC's Food Stop in Thatcher, Arizona. The lien on the Thatcher property will be retained by Jackson. Jackson is further secured by the fuel and receipts of the Debtor. The Class 2(d) Allowed Secured Claim of Jackson arises from the provision of fuel pursuant to the Jackson Supply Agreement.

The Class 2(d) Allowed Secured Claim of Jackson will be paid in monthly installments according to a twenty-five year amortization schedule, with interest at the rate of 5% per annum, and with a balloon payment thirty (30) months after the Effective Date. The Monthly Payment amount for the Class 2(d) Allowed Secured Claim of Jackson will be **$1,278**.

The Trust has consented and agreed to the payment of the balloon payment in the 30th month, and consented to the balance of the settlement and resolution of the Jackson Objection as set forth on the record at the June 12, 2013 evidentiary confirmation hearing.

The Jackson Secured Claim includes any refresh incentive obligations for transferred stores and reasonable attorneys' fees. The treatment of Jackson's Class 2(d) Allowed Secured Claim shall be deemed to satisfy any alleged "cure" relating to the assumption of the Jackson Supply Agreement.

## 7.3. **Class 3 (Unsecured Claims).**

### 7.3.1. Class 3(a) Deficiency Claims.

Class 3(a) consists of any Deficiency Claims of the secured creditors set forth above. Based upon the Debtors' estimated values of the Collateral, the Debtors do not believe that any creditor will hold a Deficiency Claim. In the event that any Class 3(a) Deficiency Claims are Allowed by the Court, holders of Allowed Class 3(a) Claims will be entitled to semi-annual pro rata distributions of the cash flows generated and amounts received by the Debtors, after payment of operating expenses and installment payments to secured creditors, for a period of five years after the Effective Date (the "Unsecured Distribution Amount"). Upon receipt of their respective pro rata portions of the

Unsecured Distribution Amount, all Allowed Unsecured Deficiency Claims in Class 3(a) will be deemed paid and discharged in full five years after the Effective Date. Class 3(a) Claims are impaired and holders of Allowed Class 3(a) Claims will be entitled to vote to accept or reject the Plan.

### 7.3.2. Class 3(b) General Unsecured Claims.

Class 3(b) consists of all General Unsecured Claims other than the Deficiency Claims and the Related Parties Unsecured Claims. Holders of Allowed Class 3(b) Claims will be entitled to semi-annual pro rata share of the Unsecured Distribution Amount for a period of five years after the Effective Date. Upon receipt of their respective pro rata portions of the Unsecured Distribution Amount, all Allowed Unsecured Deficiency Claims in Class 3(b) will be deemed paid and discharged in full five years after the Effective Date. Class 3(b) Claims are impaired and holders of Allowed Class 3(b) Claims will be entitled to vote to accept or reject the Plan.

### 7.3.3. Class 3(c) Related Parties Unsecured Claims.

Class 3(c) Related Parties Unsecured Claims will be deemed waived and released as against the Debtors on the Effective Date as a component of the contributions by the current Equity Security Interest holders under the Plan, and the Related Parties will not receive any payment on account of Class 3(c) Related Parties Unsecured Claims. The Class 3(c) Related Parties Unsecured Claims total approximately $1,378,500.

### ARTICLE VIII
### MEANS OF EFFECTUATING THE PLAN

The means of execution of the Plan are and will be as follows:

8.1. **Conditions Precedent to Occurrence of Effective Date.** It is a condition of the Effective Date that the Confirmation Order has been entered by the Bankruptcy Court and has become a Final Order. The Confirmation Order will provide that the New Value Contribution defined below is substantial and necessary, and is sufficient to satisfy the corollary to the Absolute Priority Rule so as to allow the Equity Interest holders of DOC to retain their interests in DOC even if Unsecured Creditor Claims are not paid in full under the Plan. The Effective Date is expected to occur within fifteen (15) calendar days of the entry of the Confirmation Order.

8.2. **Implementation.**

8.2.1. Cash Flow and New Value Contributions. Payments under the Plan will be funded through cash flow generated by the continued operations of the Debtors' business, and/or through alternate financing obtained from third parties. The Debtors anticipate that cash flow generated from the continued operation of its restructured business operations will increase and stabilize in the coming months, thereby increasing the cash flow for the remaining payments under the Plan. *See* Cash Flow Projections. In addition, because initial cash flows may be insufficient to fund Effective Date and Plan payments,

the Equity Interest holders of DOC will contribute on the Effective Date $250,000 to fund the Plan. In addition to the Cash New Value Contribution, the Equity Interest holders of DOC have also agreed to further support the Plan through the Real Property New Value Contribution and will contribute their respective fee simple interests in the Benson Little General and Benson Chevron in the event that the Plan is confirmed.

8.2.2. <u>Fuel and Merchandise Credit Terms</u>. The Debtors have received significant support from merchandise suppliers, including favorable credit terms which will generate $30-45,000 in additional cash on an annual basis.

8.2.3. <u>Fuel Line of Credit</u>. Jackson has also committed to a $200,000 line of credit available for fuel purchases upon confirmation of the Plan.

8.2.4. <u>Key Man Insurance Proceeds</u>. The $100,000 cash value of a DOC key man life insurance policy also will provide additional liquidity for the Plan. The life insurance policy covers the prior President of DOC, Kenneth Dunlap.

8.2.5. <u>Salary Deferrals</u>. Ted Dunlap and Jim Martin have agreed to a combined $50,000 in annual salary deferrals to further assist with liquidity if needed.

8.2.6. <u>QHI Sale and Proceeds</u>. The Debtors intend to complete a sale of the hotel property owned and operated by QHI (the "<u>Hotel</u>"). Upon the sale of the Hotel and payment of the outstanding secured taxes and the Stipulated Pineda Value for the Hotel, any excess proceeds will be transferred to DOC and made available for use by DOC in its ongoing operations.

8.3. **Future Management of Debtor.** The Reorganized Debtors will continue to be managed by Ted Dunlap. The Debtors' current management will continue in place after confirmation, with the same pre-petition rate of pay for the two years following the Effective Date. In the event that cash flows are sufficient to increase salaries, any increase to insider salaries will be limited to no more than a 10% increase per year starting in the third year following the Effective Date. The current pay for insiders, as set forth in the Debtors' monthly operating reports, is as follows:

| Name | Reason for Payment | Monthly Salary |
|---|---|---|
| TED DUNLAP | SALARY | $7920 |
| CAROL A DUNLAP | SALARY | $5360 |
| WILLIAM ALEXANDRA | SALARY | $4400 |

Mr. Alexandra is the current manager of the Quail Hollow Inn. In the event that the Quail Hollow Inn is sold or otherwise transferred, it is anticipated that Mr. Alexandra will either be terminated or will be moved to another management position.

22

**ARTICLE IX**
**RESOLUTION OF CLAIMS, DEMANDS, AND CAUSES OF ACTION**

9.1. **Preservation of Debtors' Claims, Demands, and Causes of Action.** All claims, demands, and causes of action of any kind or nature whatsoever held by, through, or on behalf of the Debtors arising before the Effective Date and that have not been resolved or disposed of prior to the Effective Date, are preserved in full for the benefit of the Debtors and the Debtors will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtors.

9.2. **Procedure for Determination of Claims.**

9.2.1. Objections to Claims. Except as to any Claim that has been Allowed prior to the Effective Date, the Debtors may object to the allowance of any Claim against the Debtors or seek estimation on any Claim.

9.2.2. Disputed Claims. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Claim is not an Allowed Claim by or on the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when a Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan.

9.2.3. Treatment of Contingent Claims. Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

**ARTICLE X**
**EXECUTORY CONTRACTS**

10.1. **Assignment, Assumption or Rejection of Executory Contracts.** As part of the turnover of the various secured creditors' Collateral on the Effective Date, the secured creditors will have the option to assume the existing executory contracts relating to those locations. CCB, Pineda, and/or Cox must provide notice of its intent to assume or reject the executory contracts by filing a notice of its decision with the Bankruptcy Court in this Case ten (10) days before the Confirmation Hearing. If CCB, Pineda, or Cox elects to assume the executory contracts, the Debtors will execute an assignment to the respective secured creditor effective as of the Effective Date of the Plan. If the secured creditor instead elects not to assume the executory contracts (or fails to timely file a notice with

23

the Bankruptcy Court), the executory contracts will be rejected by the Debtors pursuant to Section 365 of the Bankruptcy Code.

10.2. **Rejection of Executory Contracts.** The Plan contemplates and provides for the rejection, pursuant to Section 365 of the Bankruptcy Code, of any and all Executory Contracts of the Debtors which are in force on the Confirmation Date, except those Executory Contracts which were specifically assumed pursuant to an order of the Court.

10.3. **Assumption of Other Executory Contracts.** Before the Confirmation Hearing, the Debtors may file one or more motions identifying any Executory Contracts that the Debtors will assume as of the Effective Date; and such motions and the Bankruptcy Court's orders will be deemed incorporated in the Plan. All Executory Contracts not otherwise assumed will be rejected as of the Confirmation Date. Because the assumption and rejection of leases and executory contracts may depend on the election of various secured creditors in this Case, the Debtors anticipate that a final determination regarding the assumption or rejection of executory contracts will be made prior to the Confirmation Hearing, and after the Option 2 election deadline for secured creditors.

10.4. **Rejection Claims Bar Date.** Every Claim asserted by a Creditor arising from an Executory Contract that is rejected under this Plan must be filed with the Bankruptcy Court no later than the first Business Day that is thirty (30) days after the Effective Date. Every such Claim that is timely filed will be treated under the Plan as a General Unsecured Claim. Every such Claim that is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

### ARTICLE XI
### MODIFICATION OF THE PLAN

11.1. **Modification of the Plan.** The Plan may be modified by the Debtors from time to time in accordance with, and pursuant to, Section 1127 of the Bankruptcy Code. The Plan may be modified by the Debtors at any time before the Effective Date, provided that the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtors have complied with Section 1125 of the Bankruptcy Code.

24

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1.  **In General.**  The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections (or other appropriate proceedings) by the Debtors or by any other party-in-interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment, including Administrative Claims for Professional Charges.

12.2.  **Plan Disputes and Enforcement.**  The Bankruptcy Court will retain jurisdiction to determine any dispute that may arise regarding the interpretation of any provisions of the Plan.  The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan and any and all documents relating to the Plan.  The Bankruptcy Court also will retain jurisdiction over any matter relating to the implementation and/or consummation of the Plan.

12.3.  **Further Orders.**  The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan and any provision thereof.  In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, or satisfaction of any Claim, or any portion thereof, pursuant to the Plan.

12.4.  **Governmental Units or Regulatory Agencies.**  The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed, or threatened by any state, federal, or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtors.

12.5.  **Final Decree.**  The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Bankruptcy Case.

12.6.  **Appeals.**  In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to consummate the Plan.

25

12.7. **Executory Contracts.** The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising out of Executory Contracts.

12.8. **Fees of the Chapter 11 Professionals.** The Bankruptcy Court will retain jurisdiction to determine any disputes regarding the fees, costs, and expenses of the Chapter 11 Professionals or any professionals or other Persons employed by the Debtor.

12.9. **Other Claims.** The Bankruptcy Court will retain jurisdiction: (a) to hear and determine any claim or cause of action arising in or related to the Debtors' Bankruptcy Case; and (b) to adjudicate any causes of action or other proceedings currently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of the Avoidance Actions and any and all "core proceedings" under 28 U.S.C. § 157(b) (including actions to collect Accounts Receivable), which are or may be pertinent to the Bankruptcy Case and which the Debtors may deem appropriate to commence and prosecute in support of implementation of the Plan.

## ARTICLE XIII
## GENERAL PROVISIONS

13.1. **Extension of Payment Dates.** If any payment date falls due on any day that is not a Business Day, then such due date will be extended to the next Business Day.

13.2. **Notices.** Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

13.3. **Closing of the Case.** At such time as the Plan has been fully administered (i.e., when the Plan has been substantially consummated), the Debtors will file an application for Final Order showing that the Plan has been fully administered.

13.4. **General Injunction.** Except as otherwise expressly provided in the Plan, the Confirmation Order shall provide, among other things, that all parties-in-interest who have held, hold, or may hold Claims are permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtors or any successor-in-interest of the Debtors, against property of the Debtors, or against property of any successor-in-interest of the Debtors; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or any successor-in-interest of the Debtors, property of the Debtors, or against property of any successor-in-interest of the Debtors with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or

26

any successor-in-interest of the Debtors, against property of the Debtors, or against property of any successor-in-interest of the Debtors with respect to any such Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors or any successor-in-interest of the Debtors, against property of the Debtors, or against property of any successor-in-interest of the Debtors, with respect to any such Claim; (e) conducting any form of discovery from the Debtors with respect to any such Claim, or any successor-in-interest of the Debtors; and/or (f) harassing the Debtors or any successor-in-interest of the Debtors.

13.5. **Interest.** Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the applicable Petition Date on any Claim.

13.6. **Additional Assurances.** The Debtors and any party-in-interest holding Claims will execute such other further documents as are necessary to implement any of the provisions of the Plan.

13.7. **Confirmation by Non-Acceptance Method.** The Debtors requests, if necessary, confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any impaired Class of Claims that does not vote to accept the Plan.

13.8. **Vesting.** As of the Effective Date of the Plan, the Debtors shall be vested with all of the Assets of the Estate. All assets transferred to the Debtors shall be free and clear of all liens, claims, and interest of creditors and parties-in-interest, except as specifically provided in the Plan. Upon the Effective Date, except as provided in the Plan, the Debtors shall be free to borrow without further Bankruptcy Court order, such sums of money upon such terms and conditions as they may, in their sole discretion, determine, including the granting of liens and purchase money security interests.

13.9. **Successors and Assigns.** The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party-in-interest.

13.10. **Withdrawal of Plan.** The Plan may be withdrawn or revoked by the Debtors at any time before entry of the Confirmation Order.

13.11. **Severability and Reformation.** It is the intention of the Debtors to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if any provision of the Plan is determined by the Bankruptcy Court to be

27

contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan, if it cannot be reformed or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this paragraph will prevent the Debtors from modifying the Plan in any manner whatsoever in accordance with and as set forth in the Plan.  Pursuant to any ruling by the Bankruptcy Court regarding the subject matter of this paragraph, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

13.12. **Prohibition Against Prepayment Penalties.**  If the Debtors so choose, in their sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, Debtors will not be liable or subject to the assessment of any prepayment penalty unless otherwise ordered by the Bankruptcy Court.

13.13. **Fractional Dollars.**  Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars will be made.  When any payment or distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding up of such fraction to the nearest whole number.

13.14. **Payment of Statutory Fees and Filing of Quarterly Reports.**  All fees payable pursuant to 28 U.S.C. § 1980, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law.  All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

13.15. **Governing Law.**  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

13.16. **Special Tax Issues.**  The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Section 1146 of the Bankruptcy Code.

13.17. **Conflicts Between Plan and Confirmation Order.**  In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

28

13.18. **<u>Severability.</u>**  In the event that any term or provision of this Plan is declared to be invalid or illegal for any reason, the invalid or illegal term or provision will be deleted automatically, and the balance of the Plan will remain in full force and effect.


Date:  December 27, 2013                    DUNLAP OIL COMPANY, INC.

                                          */s/ Theodore Dunlap*
                                          Theodore Dunlap
                                          President, Dunlap Oil Company, Inc.


                                          QUAIL HOLLOW INN, LLC

                                          */s/ Theodore Dunlap*
                                          Theodore Dunlap
                                          On behalf of Carol Dunlap, Manager of
                                          Quail Hollow Inn, LLC